Opinion issued April 12, 2007

 









In The

Court of Appeals

For The

First District of Texas




NO. 01-05-00724-CR

____________


JOHN CURIEL, Appellant


V.


THE STATE OF TEXAS, Appellee




On Appeal from the 337th District Court

Harris County, Texas

Trial Court Cause No. 1009999



 

O P I N I O N

 Appellant, John Curiel, appeals a judgment that convicted him of engaging
in organized criminal activity, a felony, for shooting the complainant, Pedro
Nazario. See Tex. Pen. Code Ann. §§ 71.02 (Vernon Supp. 2006) (organized
criminal 

activity), 22.02 (aggravated assault). Appellant pleaded not guilty to the jury. The
jury found him guilty, and sentenced him to 15 years in prison. In five issues,
appellant contends (1) that the evidence is legally and factually insufficient to
support his conviction; (2) that the trial court erred by failing to instruct the jury
that his criminal conduct was committed "in the course" of organized criminal
activity; (3) that the State's jury argument contained improper comment on
appellant's post-arrest silence; (4) that the State's jury argument improperly asked
the jury to evaluate appellant's conduct from the perspective of a reasonable person
in appellant's position; and (5) that appellant's trial counsel rendered ineffective
assistance. We conclude that the evidence is legally and factually sufficient to
support appellant's conviction, that the jury charge was not required to contain the
phrase "in the course," that appellant waived his complaints to closing arguments
by the State's attorney by failing to object, and that appellant has not shown that
his trial counsel's performance fell below an objective standard of reasonableness. 
We affirm.

Background

 Appellant joined the street gang La Primera when he was about 12 years old. 
As a member of La Primera, he was beaten more than once by members of the rival
Southwest Cholos gang. He has been shot by the Cholos, and friends of his have
been killed. On December 8, 2004, when appellant was 16, he was in the parking
lot of the Le Promenade Town Homes complex in southwest Houston waiting for
friends to get out of school. He was armed with a .38 revolver. 

 That afternoon, the complainant drove his friends Jose Dolores and
Celedonio Magdaleno to Le Promenade, where Dolores lived. The complainant
had tied a black bandana around the steering column of his car to keep the column
together. Black is the identifying color of the Southwest Cholos. 

 Appellant approached the complainant's vehicle as the complainant was
driving in the parking area and asked "what you claim," that is, with which gang
did the complainant claim membership. Appellant wanted to know why the
bandana was on the steering column. According to the complainant, appellant
said, "Here, only Primera." Appellant pounded on the car with his hand, ordering
the complainant to stop. When the complainant parked his car, Dolores got out and
left the area. The complainant stayed in the car, shifted into reverse, and backed
out of his parking place. Appellant shot at the vehicle. The gunfire left five bullet
holes in the complainant's car's rear window. One of the bullets went through the
complainant's headrest, striking the back of the complainant's head. Appellant
fled the scene. After the complainant spoke to the police at the scene of the
shooting, he was taken to Ben Taub Hospital, where he was treated and released.

 A Houston Police Department officer who specializes in street gangs was
familiar with the Southwest Cholos and La Primera gangs. He knew appellant, and
knew that he was a member of La Primera. Appellant had previously admitted that 

he belonged to La Primera and frequently wore a white rag that signified his
continued membership in the gang. The officer identified appellant's tattoo as
being associated with La Primera, and said that the Le Promenade complex was in
La Primera territory. The officer also testified that La Primera is a criminal street
gang "as defined by the Penal Code," specifically stating that La Primera had three
or more members who have a common identifying sign or symbol and who
regularly associate in the commission of criminal activities. (1) 

 Two days after the shooting, the officer showed the complainant a photo
array, from which the complainant identified appellant as the person who shot him. 
The officer secured a warrant for appellant's arrest. Appellant, however, turned
himself in.

 At trial, the complainant denied doing or saying anything aggressive toward
appellant. The complainant also denied being a gang member, or knowing
anything about La Primera or the Southwest Cholos. The gang officer who
investigated the shooting also testified that the complainant and his friends were
not members of the Southwest Cholos. The officer, however, stated on cross-examination that the complainant's address is located in the territory claimed by
the Southwest Cholos. The officer stated that, hypothetically, a member of La
Primera, upon encountering a member of the Cholos showing Cholos colors in La
Primera territory, would likely feel apprehension. The officer also noted that a
member of La Primera had been shot across the street from the Le Promenade
complex.

 Appellant testified that the complainant was the aggressor. Appellant
admitted that he was a member of La Primera, and acknowledged that on the day
he approached the complainant, he was acting as a "soldier" in the gang,
"confronting the enemy." Appellant testified that when the complainant pulled
into the Le Promenade parking lot, a black bandana was tied to the car's rear-view
mirror. Appellant thought that "they were going to come shoot one of us or beat
up one of us." Appellant stated that he approached the car "[t]o see what it was
about . . . . Because I didn't want another friend of mine to pass away." He
admitted striking the vehicle with his hand, and ordering the complainant to park. 
Appellant testified that after he asked the complainant who he claimed, the
complainant responded with a Southwest Cholos hand sign and a vulgar insult. 
Appellant said that he thought he was going to be run over when the complainant
put the car into reverse. Appellant stated that he feared for his life, and fired at the
complainant in order to scare the complainant away.

 After the defense rested, the State called as a rebuttal witness Magdaleno,
one of the complainant's passengers. Magdaleno testified that the complainant
never displayed a Cholos hand sign, and never cursed at appellant. The State also
recalled the complainant who likewise denied showing gang signs or cursing. The
complainant also denied trying to run appellant over with his vehicle.

Sufficiency of the Evidence

 In his first issue on appeal, appellant contends that the evidence is legally
and factually insufficient to show "intended continuity indicating that appellant
intended to establish, maintain or participate in a group of three or more, in which
members intend to work together in a continuing course of criminal activities." 
We begin by addressing the statutory elements to prove the offense of engaging in
organized criminal activity.

A. The Elements of Engaging in Organized Criminal Activity

 The construction of a statute is a question of law. State v. Vasilas, 187
S.W.3d 486, 488 (Tex. Crim. App. 2006). We examine the plain language of the
statute to determine its meaning. Id. Section 71.02(a) of the Penal Code states, in
pertinent part,

§ 71.02 Engaging in Organized Criminal Activity


(a) A person commits an offense if, with the intent to
establish, maintain, or participate in a combination or in
the profits of a combination or as a member of a criminal
street gang, he commits or conspires to commit one or
more of the following:


(1) . . . aggravated assault . . . .


Tex. Pen. Code Ann. § 71.02(a). Under the plain language of section 71.02(a), a
defendant is guilty of engaging in organized criminal activity when the State
proves the first element, that the defendant committed a specific offense that is
listed under that chapter, such as aggravated assault; and the second element, that
the defendant committed that offense "with the intent to establish, maintain, or
participate . . . as a member of a criminal street gang." See id. Appellant's
sufficiency of the evidence challenge concerns the second element only. Appellant
does not challenge the proof relating to appellant's commission of the underlying
offense of aggravated assault or the failure to disprove self-defense.

1. Underlying Offense Need Not Be Committed by More Than One Person

 Appellant contends that the State's proof must show that appellant
committed the offense with "two or more others." Under the plain language of
section 71.02(a), a defendant may be found guilty of engaging in organized
criminal activity when "he commits or conspires to commit" one of the specifically
enumerated offenses. Id. To be convicted of engaging in organized criminal
activity, the plain language of the Penal Code does not require that more than one
person commit the underlying offense. Id. A person may be convicted of engaging
in organized criminal activity by individually committing the offense or by
conspiring with others to commit the offense. (2) Id. Here, the conviction is based on
appellant himself committing the aggravated assault, which, under the plain
language of the Penal Code, does not require that he commit the offense with other
persons. Id. We cannot conclude, therefore, that the State's evidence is inadequate
merely because it fails to show that appellant committed the offense with "two or
more others." 

2. Proof of Combination or Profits of a Combination Not Required

 Appellant contends that the State is required to prove not only that the
offense was committed "with the intent to establish, maintain, or participate . . . as
a member of a criminal street gang," but must also prove that the offense was
committed "with the intent to establish, maintain, or participate in a combination or
in the profits of a combination" when he committed the crime. We disagree. 
Under the plain language of section 71.02(a), the State may establish that a
defendant is guilty of engaging in organized criminal activity if the defendant
commits the underlying criminal offense with the intent to establish, maintain or
participate (1) in a combination, or (2) in the profits of a combination, or (3) as a
member of a criminal street gang. Id. The word "or" precedes each of these two
phrases, indicating that they may be alternatively proven. See id. The State's
proof, therefore, must show that appellant had the intent to establish, maintain or
participate as a member of a criminal street gang, but need not further show that
appellant had the intent to act in a combination, (3) or in the profits of a combination, (4)
because those are alternative ways of proving an offense of engaging in organized
criminal activity. See id. 

3. Organized Criminal Activity Requires Proof of Intent 

 In the present case, both the indictment and the jury charge omit the
requisite mental state, requiring only that appellant commit the underlying offense
"as a member of a criminal street gang." We measure the sufficiency of the
evidence by the elements of the offense as they would be presented in a
hypothetically correct jury charge. Malik v. State, 953 S.W.2d 234, 240 (Tex.
Crim. App. 1997) (en banc). (5) Although neither the indictment nor the jury charge
required any proof of intent concerning the criminal street gang, our task here is to
determine, using a hypothetically correct jury charge, if the evidence is legally and
factually sufficient to prove that appellant committed the underlying aggravated
assault "with the intent to . . . participate . . . as a member of a criminal street
gang." See id.; see also Tex. Pen. Code Ann. § 71.02(a). Section 71.01 of the
Penal Code defines "criminal street gang" as "three or more persons having a
common identifying sign or symbol or an identifiable leadership who continuously
or regularly associate in the commission of criminal activities." Tex. Pen. Code
Ann. § 71.01(d) (Vernon 2003). Appellant's remaining challenges concern the
specific evidence to establish the proof of his intent. 

B. Legal Sufficiency

 In a legal sufficiency review, we view all of the evidence in the light most
favorable to the verdict and then determine whether a rational trier of fact could
have found the essential elements of the crime beyond a reasonable doubt. King v.
State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000) (en banc). The jurors are the
exclusive judges of the facts, the credibility of the witnesses, and the weight to give
their testimony. Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000)
(en banc). A jury is entitled to accept one version of the facts and reject another, or
reject any part of a witness's testimony. Id. "Each fact need not point directly and
independently to the guilt of the appellant, as long as the cumulative force of all the
incriminating circumstances is sufficient to support the conviction." Hooper v.
State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

 Viewing the evidence in a light most favorable to the jury's verdict, the
evidence shows that appellant committed the underlying aggravated assault with
the intent to participate as a member of a criminal street gang. The police officer
testified that La Primera consisted of three or more persons having a common
identifying sign or symbol or an identifiable leadership who continuously or
regularly associate in the commission of criminal activities. See Tex. Pen. Code
Ann. § 71.01(d). The police officer also testified that appellant admitted being a
member of La Primera, and that appellant had a tattoo that signified membership
with the gang. The complainant further said that just prior to the shooting,
appellant said "Here, only Primera." Further, appellant said that he was acting as
a soldier for La Primera when he approached the complainant. Viewing the
evidence in the light most favorable to the verdict, we conclude that a rational trier
of fact could have determined beyond a reasonable doubt that appellant committed
the underlying aggravated assault with the intent to participate as a member of a
criminal street gang. See id. § 71.02(a); King, 29 S.W.3d at 562. We hold that the
evidence is legally sufficient to show that a rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt. See King, 29
S.W.3d at 562. 

C. Factual sufficiency

 When conducting a factual-sufficiency review, we view all of the evidence
in a neutral light. Cain v. State, 958 S.W.2d 404, 408 (Tex. Crim. App. 1997) (en
banc). We will set aside the verdict only if (1) the evidence is so weak that the
verdict is clearly wrong and manifestly unjust or (2) the verdict is against the great
weight and preponderance of the evidence. Johnson v. State, 23 S.W.3d 1, 11
(Tex. Crim. App. 2000) (en banc). Under the first prong of Johnson, we cannot
conclude that a conviction is "clearly wrong" or "manifestly unjust" simply
because, on the quantum of evidence admitted, we would have voted to acquit had
we been on the jury. Watson v. State, 204 S.W.3d 404, 417 (Tex. Crim. App.
2006). Under the second prong of Johnson, we cannot declare that a conflict in the
evidence justifies a new trial simply because we disagree with the jury's resolution
of that conflict. Id. Before finding that evidence is factually insufficient to support
a verdict under the second prong of Johnson, we must be able to say, with some
objective basis in the record, that the great weight and preponderance of the
evidence contradicts the jury's verdict. Id. In conducting a factual-sufficiency
review, we must also discuss the evidence that, according to the appellant, most
undermines the jury's verdict. See Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim.
App. 2003). The fact-finder alone determines what weight to place on
contradictory testimonial evidence because that determination depends on the fact-finder's evaluation of credibility and demeanor. Cain, 958 S.W.2d at 408-09. 

 Appellant challenges the adequacy of the State's proof to show that he was a
member of the gang by asserting that only one police officer testified that he was a
member of the gang. Appellant refers to his own testimony that he joined the
gang for protection only as evidence contrary to the jury's finding that the gang
conducted criminal activities or that he joined the gang to commit crimes. 
Appellant also claims that the State's proof fails to show that he had knowledge of
or participated in other criminal activities with the gang, or that the gang was
aware of any criminal activities conducted by him. He also reiterates that the
complainant instigated the confrontation, and that the complainant was attempting
to run him over. Appellant contends that there was no evidence that "appellant
committed this offense as part of his intent to remain a continuing member of the
gang" and that appellant shot the complainant only because the complainant was
trying to run him over. 

 We cannot conclude that the evidence is factually insufficient to show that
appellant was a member of a gang, that the gang met the definition in the Penal
Code, or that appellant committed the underlying offense with the intent to
participate as a member of a criminal street gang. The police officer testified that
La Primera met the definition in the Penal Code that defines "criminal street gang"
as "three or more persons having a common identifying sign or symbol or an
identifiable leadership who continuously or regularly associate in the commission
of criminal activities." See Tex. Pen. Code Ann. § 71.01(d). Appellant affirmed
that he committed the assault as a soldier for his gang. Appellant had a tattoo that
linked him to La Primera, told the complainant that the area belonged to La
Primera, asked the complainant about a bandana that bore a color associated with a
rival gang, and had previously admitted that he was a member of La Primera.

 Appellant's challenges to the factual sufficiency of the evidence are based
on the credibility of witnesses and the weight to give their testimony, issues on
which we must defer to the jury. See Cain, 958 S.W.2d at 408-09. We conclude
that, viewed in a neutral light, the evidence tending to prove that appellant
committed the underlying aggravated assault with the intent to participate as a
member of a criminal street gang is not so weak as to render the jury's verdict
clearly wrong or manifestly unjust. See Johnson, 23 S.W.3d at 11. We also
conclude that, viewed in a neutral light, the verdict is not against the great weight
and preponderance of the evidence that appellant committed the underlying
aggravated assault with the intent to participate as a member of a criminal street
gang. See id. We hold that the evidence is factually sufficient to sustain the jury's
guilty verdict. See id. We overrule appellant's first issue.

Jury Charge

 In his second issue on appeal, appellant contends that the court's charge to
the jury incorrectly stated the law by failing to "require a conviction only if the
jury finds that the aggravated assault was committed in the course of gang
membership." Appellant did not raise an objection to the charge on these grounds
before the trial court. (6) Appellant, however, asserts that this failure was
fundamental error, which we reverse even absent an objection upon a showing of
"egregious harm." See Olivas v. State, 202 S.W.3d 137, 144 (Tex. Crim. App.
2006) (applying Almanza v. State, 686 S.W.2d 157, 172 (Tex. Crim. App. 1984)).

 No language in the Penal Code requires that appellant have committed
aggravated assault "while in the course" of gang membership. The Penal Code
does not require that aggravated assault be committed "in the course" of gang
membership. See Tex. Pen. Code Ann. §71.02(a). We hold that the trial court did
not err by declining to include the phrase "in the course" in its charge to the jury
when the legislature has not included that phrase in the controlling statute. See id.;
Riddle v. State, 888 S.W.2d 1, 8 (Tex. Crim. App. 1994) (en banc) ("A jury charge
which tracks the language of a particular statute is a proper charge on the statutory
issue." ). We overrule appellant's second issue. (7)

State's Closing Arguments

 In his third and fourth issues, appellant challenges statements made by the
State's attorney in closing arguments. Appellant has failed to preserve these
complaints for appeal.

A. Appellant's silence

 In his third issue, appellant complains that the trial court erred by not
granting a mistrial following the prosecuting attorney's impermissible jury
argument concerning appellant's post-arrest silence.

 An appellant's trial objection must comport with his objection on appeal, or
error is waived. Tex. R. App. P. 33.1(a)(1)(A); Penry v. State, 903 S.W.2d 715,
753 (Tex. Crim. App. 1995). At trial, appellant objected on the grounds that the
State's argument improperly shifted the burden of proof; here, he contends that the
State improperly commented on post-arrest silence. (8) Because the ground in
appellant's 

trial motion does not comport with his assertions on appeal, any error is waived. 
See Tex. R. App. P. 33.1(a)(1)(A). Appellant contends, however, that we should
reverse even though he has failed to preserve error. He cites the Court of Criminal
Appeals' opinion in Nichols v. State as support for the proposition that "[e]ven if
the Court finds that Appellant's trial counsel did not properly object to each
instance of improper argument . . . the Court of Appeals may still reverse for
unobjected-to argument error if argument was so prejudicial that instruction to
disregard would not have cured harm." See Nichols v. State, 754 S.W.2d 185,
199-200 (Tex. Crim. App. 1988) (en banc). However, the Court of Criminal
Appeals more recently stated, in a case where an appellant's complaint on appeal
did not comport with his objection at trial, that "we hold a defendant's failure to
object to a jury argument or a defendant's failure to pursue to an adverse ruling his
objection to a jury argument forfeits his right to complain about the argument on
appeal. Any prior cases to the contrary . . . are expressly overruled." Cockrell v.
State, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996) (en banc) (citations to overruled
authority omitted). We hold that by failing to object on the same grounds
presented on appeal, appellant has waived his challenge to the State's closing
argument. See id. We overrule appellant's third issue.

B. Law of Self-Defense

 In his fourth issue, appellant complains of the prosecutor's statement during
jury argument that the law of self-defense required the jury members to place
themselves in the position of appellant, and not to consider appellant's actions
from his point of view. (9) 

 When an appellant fails to object to jury argument, he forfeits his right to
raise the issue on appeal. Threadgill v. State, 146 S.W.3d 654, 670 (Tex. Crim.
App. 2004) (en banc). Appellant's trial counsel did not object to the State's
argument concerning self-defense. Because appellant failed to object at trial to the
State's argument, any 

error in argument is waived. See Cockrell, 933 S.W.2d at 89. We overrule
appellant's fourth issue.

Ineffective Assistance of Counsel

 In his fifth issue, appellant contends that "trial counsel's representation on
the whole was ineffective in numerous ways, including, but not limited to: failing
to object to the State's questions and arguments relating to viewing appellant's
actions from his standpoint only; failing to object each time to the State's argument
and questioning about appellant's post-arrest silence; counsel's placing juror #51
who said he refused to consider probation as punishment, although appellant was
eligible."

 To prevail on a claim of ineffective assistance of counsel, the defendant
must show that trial counsel's performance was deficient and a reasonable
probability exists that the result of the proceeding would have been different.
Strickland v. Washington, 466 U.S. 668, 687, 693, 104 S. Ct. 2052, 2064, 2068
(1984). The first prong of the Strickland test requires that the defendant show that
counsel's performance fell below an objective standard of reasonableness. 
Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). Thus, the
defendant must prove objectively, by a preponderance of the evidence, that trial
counsel's representation fell below professional standards. Mitchell v. State, 68
S.W.3d 640, 642 (Tex. Crim. App. 2002) (en banc). The second prong requires
that the defendant show a reasonable probability that, but for counsel's
unprofessional errors, the result of the 

proceeding would have been different. See Strickland, 466 U.S. at 694, 104 S. Ct.
at 2068; Thompson, 9 S.W.3d at 812. Because the reviewing court must, however,
indulge a strong presumption that counsel's conduct falls within the wide range of
reasonable professional assistance, the defendant must overcome the presumption
that, under the circumstances, the challenged action "might be considered sound
trial strategy." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. 

 Any allegation of ineffectiveness must be firmly founded in the record,
which must demonstrate affirmatively the alleged ineffectiveness. Thompson, 9
S.W.3d at 813 (citing McFarland v. State, 928 S.W.2d 482, 500 (Tex. Crim. App.
1996) (en banc)). We will not speculate to find trial counsel ineffective when the
record is silent on counsel's reasoning or strategy. See Robinson v. State, 16
S.W.3d 808, 813 n.7 (Tex. Crim. App. 2000). In rare cases, however, the record
can be sufficient to prove that counsel's performance was deficient, despite the
absence of affirmative evidence of counsel's reasoning or strategy. Id. Here,
appellant did not obtain a motion for new trial hearing and no direct evidence in
the record establishes why appellant's attorney did not object at trial to the
testimony complained of on appeal. We therefore presume that counsel had a
plausible reason for his actions. Thompson, 9 S.W.3d at 814. On appeal, appellant
has failed to explain why the actions by trial counsel are below an objective
standard of reasonableness. We conclude that appellant does not meet the first
prong of Strickland because he has failed to show that his counsel's performance
fell below an objective standard of reasonableness. See Mitchell, 68 S.W.3d at
642; Thompson, 9 S.W.3d at 812. 

 In this appeal, appellant also has failed to explain why the purported failures
by trial counsel would have caused a different result. We further conclude that
appellant has not established the second prong of Strickland because he has failed
to show in reasonable probability that, but for counsel's errors, the result of the
proceeding would have been different. See Strickland, 466 U.S. at 694, 104 S. Ct.
at 2068; Thompson, 9 S.W.3d at 812.

 We hold that appellant has failed to show that he received ineffective
assistance of counsel. We overrule appellant's fifth issue.

Conclusion

 We affirm the judgment of the trial court.






 Elsa Alcala

 Justice


Panel consists of Justices Taft, Alcala, and Hanks.

Publish. Tex. R. App. P. 47.2(b).
1. The Penal Code defines "criminal street gang" as "three or more persons having a
common identifying sign or symbol or an identifiable leadership who continuously
or regularly associate in the commission of criminal activities." Tex. Pen. Code
Ann. § 71.01(d) (Vernon 2003). 
2. A conviction for engaging in organized criminal activity that is based on a defendant
conspiring to commit an offense requires the involvement at least one more person. 
"Conspires to commit" is defined in the Penal Code as meaning


that a person agrees with one or more persons that they or one or more of them
engage in conduct that would constitute the offense and that person and one
or more of them perform an overt act in pursuance of the agreement. An
agreement constituting conspiring to commit may be inferred from the acts of
the parties.


Id. § 71.01(b).
3. The Penal Code defines combination as


three or more persons who collaborate in carrying on criminal activities,
although:


(1) participants may not know each other's identity;


(2) membership in the combination may change from time to time;
and


(3) participants may stand in a wholesaler-retailer or other arm's-length relationship in illicit distribution operations.


Id. § 71.01(a).
4. The Penal Code defines profits as "property constituting or derived from any proceeds
obtained, directly or indirectly, from an offense listed in Section 71.02." Id. §
71.01(c).
5. A hypothetically correct charge "accurately sets out the law, is authorized by the
indictment, does not unnecessarily increase the State's burden of proof or
unnecessarily restrict the State's theories of liability, and adequately describes the
particular offense for which the defendant was tried." Malik v. State, 953 S.W.2d
234, 240 (Tex. Crim. App. 1997). Where, as here, the indictment and jury charge are
similarly defective, the hypothetically correct jury charge should allege all elements
as set forth in the controlling penal statute, in order not to unconstitutionally broaden
the basis on which the State may obtain a conviction. See Garcia v. State, 32 S.W.3d
328, 332 (Tex. App.--San Antonio 2000, no pet.) (citing Fisher v. State, 887 S.W.2d
49, 55-58 (Tex. Crim. App. 1994), overruled on other grounds by Malik, 953 S.W.2d
at 234). 
6. Appellant contends the following language was error:


 Our law provides that a person commits an offense, if, as a member of
a criminal street gang, he commits the offense of aggravated assault.


. . .


 Now, if you find from evidence beyond a reasonable doubt that in Harris County,
Texas, the defendant . . . heretofore on or about the 8th day of December, 2004, did then and
there unlawfully, as a member of a criminal street gang, namely, La Primera, commit the
offense of aggravated assault in that he did unlawfully, intentionally or knowingly threaten
[the complainant] with imminent bodily injury by using or exhibiting a deadly weapon,
namely, a firearm; or . . . . [I]ntentionally or knowingly cause bodily injury to [the
complainant] by using a deadly weapon, namely, a firearm; or . . . . [R]ecklessly cause bodily
injury to [the complainant] by using a deadly weapon, namely, a firearm and shooting the
firearm in the direction of [the complainant], then you will find the defendant guilty of
engaging in organized criminal activity, as charged in the indictment. 
7. In our discussion of sufficiency of the evidence, we noted that the trial court's charge
to the jury erroneously failed to require the State to prove that appellant had the
culpable mental state of intent to partipate as a member of a criminal street gang.
Appellant has not challenged that error on appeal. We therefore need not address
whether appellant was harmed by the error. See Tex. R. App. P. 33.1.
8. Specifically, appellant points to the following exchanges during argument:


[State's Attorney]: Where were the trajectory requests on that day? Where
were--


[Defense Counsel]: Excuse me, Your Honor. That's objectionable. That's shifting the
burden to the Defense, Your Honor. We weren't there. That is totally unacceptable.


THE COURT: Sustained.


[Defense Counsel]: Move for a mistrial, Your Honor.


THE COURT: It's overruled.


. . .


[Defense Counsel]: Motion to disregard, Your Honor.


THE COURT: The jury will disregard the last statement about the trajectory test.


. . .

[State's Attorney]: But the trajectory tests were not done by the police. That is true. But was
there anybody there to ask them to do that? Was there anybody there to say, Look, this was
a case of self-defense?


[Defense Counsel]: Judge, he's just back to arguing it again.


THE COURT: That's overruled.
9. Specifically, he complains of the following:


 . . . I think there's key words here you have to look at. "A person is
justified in using deadly force against another if he would be justified in using
force against the other in the first place and when he reasonably
believes--when he reasonably believes"--what does that mean? It doesn't
mean what a reasonable gang banger would believe. That's not what it says. 
It says: "A reasonable belief as used herein is meant a belief that would be
held by an ordinary and prudent person--ordinary and prudent person in the
same circumstances as the defendant." That means one of y'all. Not one of
them. One of y'all. A reasonable and prudent person.


 So, watch those key phrases. "Reasonably believe," that means you put yourself in
his situation; and if you would have shot at these people all those times, then I supposed [sic]
you could find he exercised self-defense in the proper way. But I'd submit I don't see how
you could do that.