Opinion issued March 26, 2009












In The
Court of Appeals
For The
First District of Texas




NO. 01-07-00772-CR




JAIRUS DEWIGHT KESSE, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 182nd District Court
Harris County, Texas
Trial Court Cause No. 1123522




MEMORANDUM OPINION
            A jury convicted appellant, Jairus Dewight Kesse, of aggravated robbery, and
the trial court assessed punishment at 25 years in prison and a $10,000 fine. See TEX.
PEN. CODE ANN. § 29.03(a)(2) (Vernon 2008). In three issues, appellant contends
that: (1) the trial court unreasonably limited his time for closing argument at the guilt-innocence phase; (2) the prosecutor improperly commented on his rights to remain
silent and to representation; and (3) he received ineffective assistance of counsel
because his trial attorney made the wrong objection to the State’s improper comment. 
We affirm.
Background
          Brandon Johnson wanted to buy a used vehicle. While driving in southwest
Houston, he saw a Ford Taurus with “for sale” written in shoe polish on the rear
window. He called the phone number on the car and left a message. Appellant, who
identified himself only as “J” and said he owned the car, returned Johnson’s phone
call and told him that he wanted $2,500 for the car. Johnson and appellant called
each other several times over a couple of days, sometimes leaving messages. They
agreed to meet on a Sunday so that Johnson could see the car.
            Johnson met appellant at a gas station in southwest Houston. When appellant
arrived, he went inside the convenience store to get a drink, offering to get one for
Johnson as well. Appellant told Johnson he had to do something at his apartment,
which was less than a quarter mile from the gas station, and he asked Johnson to go
with him. Johnson followed appellant to an apartment complex. Appellant said he
had to unlock the apartment door and invited Johnson to come inside, rather than
waiting in the parking lot. He said that he would let Johnson take the car for a test
drive after he completed whatever errand he had in the apartment. Not suspecting any
untoward motives, Johnson followed appellant into the apartment. 
            Inside, Johnson saw three men in the living room area, two of whom were
playing a video game. Appellant went into the kitchen, and Johnson sat down at the
bar. Almost immediately, he saw two of the men pointing guns at him. They ordered
him to lie down on the floor, saying “[Y]ou know what it is . . . you know what it is
. . . Get down.” Johnson lay prone on the floor. One man put his foot on Johnson’s
shoulder and threatened to kill him if he moved.
          One of the men emptied Johnson’s pockets, taking his wallet, his cellular
telephone, and his garage door opener. Johnson’s wallet contained $1,200 in cash,
bank cards, his and his toddler son’s social security cards, his driver’s license, and
another identification card. Johnson testified that the gunmen gave his wallet and his 
cellular phone to appellant, who left the apartment with the other unarmed man. 
Johnson said that appellant “never said a word” after they entered the apartment. 
Johnson testified that he feared for his life.
          The man who had his foot on Johnson’s shoulder threatened to shoot him if he
felt “any pressure on [his] foot.” However the other gunman said Johnson would be
allowed to leave:
No. No. We ain’t going to do nothing to him. We ain’t going to beat
him up. We ain’t going to shoot him. We going to let you go. When we
tell you to, you get up . . . You get up and we’re going to walk you to the
door and you walk outside and you get in your shit and you leave.
 
The robbers ordered Johnson to leave, and he held his hands in the air, as instructed,
while the robbers held him at gunpoint. When they opened the door and saw children
playing outside, one robber told Johnson to put his hands down. They told him to
leave and not to call the police, saying they knew where he lived. Johnson blurted
out, “You got my keys. I can’t leave.” The robbers tossed Johnson’s keys outside as
he left.
            When Johnson reached his car, he noticed that the Ford Taurus was gone. 
Johnson left the apartment complex and went to his former girlfriend’s home to pick
up his son. After discussing the robbery with her, Johnson realized that his driver’s
license listed his parent’s address in Jasper, Texas. He then went to the police station
to report the robbery.
          At the police station, Johnson met Houston Police Officer Vinson, and they
drove back to the apartment complex, where Johnson was able to tell Officer Vinson
that the robbery occurred in one of two apartments. He also gave Officer Vinson the
license plate number of the Ford Taurus, which a subsequent search showed was
registered to appellant. Officer Vinson continued her investigation, seeking security
tapes from the gas stations, speaking with the landlord of the apartment complex,
reviewing the leases for the apartments that Johnson identified, and preparing
photographic lineups based on this information.
          Johnson identified appellant and another of the robbers in two separate
photographic lineups. Neither appellant nor the other robber whom Johnson
identified were listed on the apartment leases. Officer Vinson did not find the Ford
Taurus or contact appellant. Rather, based on Johnson’s identification, a warrant was
issued for appellant’s arrest. Appellant was arrested on March 3, 2007, after he was
involved in an automobile accident.
          At trial, the State presented Johnson and Officer Vinson. Vinson testified that
Johnson immediately identified appellant from a photographic lineup, and she also
identified appellant in court as the man whom Johnson had previously identified. 
Johnson identified appellant in court as one of the men who robbed him. In addition,
on cross-examination, appellant’s attorney questioned the completeness of Vinson’s
investigation. Appellant presented only one witness, his fiancee, who briefly testified
that his car was never for sale. After less than two days of trial, appellant asked for
55 minutes for closing argument, and the trial court allotted 15 minutes. The jury
found appellant guilty of aggravated robbery. Appellant pled true to a prior robbery
conviction alleged to enhance punishment. The jury sentenced appellant to 25 years
in prison and a $10,000 fine.
Closing Argument
            In his first issue, appellant contends that the trial court unreasonably limited
his time for closing argument. We review a trial court’s decision to limit oral
argument for abuse of discretion. Dang v. State, 154 S.W.3d 616, 619 (Tex. Crim.
App. 2005). In determining whether the trial court abused its discretion by limiting
appellant’s time for closing argument, we consider the following, non-exclusive
factors: (1) the quantity of the evidence, (2) the duration of the trial (3) conflicts in
the testimony, (4) the seriousness of the offense, (5) the complexity of the case, (6)
whether counsel used the time allotted efficiently, and (7) whether counsel set out
what issues were not discussed because of the time limitation. Id. at 621. 
          The State argues that appellant’s complaint is not preserved because he failed
to make a record as to what he would have argued if he had been provided with more
time. We note that this is the seventh Dang factor. However, the Court of Criminal
Appeals did not conclude that such a record is a requirement for error preservation. 
Id. Therefore, we will also consider this as one factor in our analysis.
            Appellant contends that the 15 minutes the trial court allowed for closing
argument was unreasonable. In this case, three witnesses testified during the guilt-innocence phase: the complainant, the investigating officer, and appellant’s fiancee. 
The entire trial lasted only two days, with less than five hours combined for opening
and closing arguments and testimony during the guilt/innocence phase. There were
no conflicts in the witnesses testimony, although appellant’s trial attorneys vigorously
cross-examined the complainant as to his credibility and the investigating officer as
to her investigatory methods. 
          Although aggravated robbery is a first-degree felony, and, therefore, a serious
offense, the issues here were straightforward as opposed to complex. Johnson
testified that appellant lured him into an apartment where he was robbed at gunpoint
by men who gave his wallet and cell phone to appellant. Johnson and Vinson both
testified that Johnson immediately identified appellant from a photographic lineup
and identified him in court as the man who robbed him. Here, the central issue was
Johnson’s credibility. Appellant’s trial counsel used all the allotted time, but he did
not set out what issues were not discussed because of the time limitation.


 In light of
these factors, we hold that the trial court did not abuse its discretion by denying
appellant’s request for 55 minutes for closing argument and allowing him 15 minutes
instead. We overrule appellant’s first issue.
Improper Prosecutorial Comment
            In his second issue, appellant contends that the prosecutor improperly
commented on appellant’s invocation of his right to counsel and his post-arrest
silence. An appellant’s trial objection must comport with his objection on appeal, or
error is waived. TEX. R. APP. P. 33.1(a)(1)(A).
            At trial, Officer Vinson testified that she spoke to appellant in jail but that she
terminated her interview after appellant told her that he was represented by counsel. 
Appellant’s trial counsel did not object to that statement. Therefore, any error
regarding this statement is waived. See id.
          Appellant objected to relevance when the State questioned Officer Vinson
about her investigation, inquiring whether certain information could be obtained only
from appellant. On appeal, appellant contends that the State improperly commented
on his post-arrest silence and his right to counsel. Because appellant’s trial objection
does not comport with his issue on appeal, any error is waived. See TEX. R .APP. P.
33.1(a)(1)(A); Curiel v. State, 243 S.W.3d 10, 19–20 (Tex. App.—Houston [1st Dist.]
2007, pet. ref’d). We overrule appellant’s second issue.Ineffective Assistance of Counsel
          In his third issue, appellant argues that the prosecutor’s questioning of Officer
Vinson on redirect was an improper comment on appellant’s post-arrest silence and
right to counsel. Appellant contends that he received ineffective assistance of
counsel because his trial attorney made the wrong objection when she objected based
only on relevance and not on the alleged violation of the Texas and United States
constitutions.



Standard of Review
          To show ineffective assistance of counsel, a defendant must demonstrate both
(1) that his counsel’s performance fell below an objective standard of reasonableness
and (2) that there is a reasonable probability that, but for counsel’s unprofessional
errors, the result of the proceeding would have been different. Strickland v.
Washington, 466 U.S. 668, 687–88, 694, 104 S. Ct. 2052, 2064, 2068 (1984);
Andrews v. State, 159 S.W.3d 98, 101–02 (Tex. Crim. App. 2005). A defendant has
the burden to establish both of these prongs by a preponderance of the evidence, and
a failure to make either showing defeats his ineffectiveness challenge. Mitchell v.
State, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002).
          Our review of appellant’s trial counsel’s performance must be highly
deferential. Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. We determine the
reasonableness of counsel’s challenged conduct in context and view it as of the time
of the conduct. Id. at 690. We are to assume a strategic motive if any can be
imagined and to find counsel’s performance deficient only if the conduct was so
outrageous that no competent attorney would have engaged in it. Bone v. State, 77
S.W.3d 828, 833 n.13 (Tex. Crim. App. 2002). Generally, an isolated failure to object
to certain procedural mistakes or improper evidence does not constitute ineffective
assistance of counsel. Ingham v. State, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984).
          In most cases, the undeveloped record on direct appeal will be insufficient to
satisfy the dual prongs of Strickland because the reasonableness of counsel’s
decisions often involves facts not appearing in the appellate record. Rylander v.
State, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003). Therefore, it is usually critical
that the defendant obtain the necessary record in the trial court to rebut the Strickland
presumption that counsel’s conduct was strategic. Thompson v. State, 9 S.W.3d 808,
814 (Tex. Crim. App. 1999); McCullough v. State, 116 S.W.3d 86, 92 (Tex.
App.—Houston [14th Dist.] 2001, pet. ref’d). This kind of record is best developed
in a hearing on a motion for new trial or by application for a writ of habeas corpus. 
See Jackson v. State, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998); McCullough, 116
S.W.3d at 92.
Post-Arrest Silence
          Appellant complains that his attorney failed make the proper objection when
the State questioned Officer Vinson about certain information that could have been
obtained from appellant. On cross-examination, appellant’s trial attorney questioned
Officer Vinson regarding how thoroughly she investigated this case before she
obtained a warrant for appellant’s arrest. Appellant’s attorney asked Officer Vinson
if she had verified appellant’s address, seen the vehicle in question, located any
witnesses other than Johnson, spoken to the residents in either apartment identified
by Johnson, recovered any weapons, obtained any evidence that appellant had friends
or relatives who lived at the apartment complex where the robbery occurred. Officer
Vinson testified that she had not done any of these things before seeking a warrant
for appellant’s arrest.
          On redirect, the State asked Officer Vinson about those aspects of her
investigation.
          Q:      And in regards to your investigation that defense counsel was
asking you, is a lot of the information that she was asking you
needed to be coming from the defendant . . . . Let me rephrase that
question. Is a lot of the information that you needed would be
from the defendant . . . . As far as who his friends were, where he
lives, where to be found, the defendant would know that, correct?
 
          A:      That’s correct, ma’am.
          The Due Process Clause of the United States Constitution prohibits the
cross-examination of a defendant concerning his silence after he has been arrested
and given Miranda


 warnings. Doyle v. Ohio, 426 U.S. 610, 619, 96 S. Ct. 2240,
2245 (1976). The goal of Doyle is to prevent a jury from drawing inferences of guilt
from a defendant’s decision to remain silent after being told he has a right to remain
silent. See id. The same consideration bars the prosecution from using evidence of
such silence as part of its case-in-chief against the defendant. 41 George E. Dix &
Robert O. Dawson, Texas Practice, Criminal Practice & Procedure § 13.312,
at 178 (2d ed. 2001). Under Texas law, the prosecution’s commenting on post-arrest
silence, whether before or after the giving of Miranda warnings, is a violation of an
accused’s right to be free from compelled self-incrimination under article I, section
10 of the Texas Constitution. See Tex. Const. art. I, § 10; Sanchez v. State, 707
S.W.2d 575, 580 (Tex. Crim. App. 1986). However, pre-arrest silence is a
constitutionally permissible area of inquiry. Jenkins v. Anderson, 447 U.S. 231,
238–40, 100 S. Ct. 2124, 2129–30 (1980); Waldo v. State, 746 S.W.2d 750, 755 (Tex.
Crim. App. 1988).
          The questions and answer that appellant challenges are not a comment on his
post-arrest silence. Because these questions referred to the defense questions about
Officer Vinson’s investigation prior to the issuance of the arrest warrant, these
statements refer to things that necessarily occurred pre-arrest.


 We cannot say that
appellant’s counsel was unreasonable for failing to make an unfounded objection. 
 See Strickland, 466 U.S. at 687–88, 104 S. Ct. 2052, 2064; Andrews, 159 S.W.3d at
101–02. 
          Moreover, appellant has not shown that the result of the trial would have been
different. Johnson unequivocally identified appellant both in court and in a
photographic lineup. The areas of inquiry that appellant challenges in this issue are
not necessarily relevant to whether he was guilty or not guilty, i.e., where appellant
lived, who his friends were, where he could have been found. Appellant has failed
to establish either prong of Strickland by a preponderance of the evidence. We
overrule his third issue. See Mitchell, 68 S.W.3d at 642.
 
Conclusion
          We affirm the judgment of the trial court.
 
 
                                                             Jim Sharp
                                                             Justice
 
Panel consists of Justices Taft, Bland, and Sharp.
Do not publish. Tex. R. App. P. 47.2(b).