**Opinion issued November 29, 2012.**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NOS. 01-11-01083-CR, 01-11-01084-CR

_____

**ALAN RICHARDSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 182nd District Court**
**Harris County, Texas**
**Trial Court Case Nos. 1212794, 1212795**

---

**MEMORANDUM OPINION**

Appellant Alan Richardson was charged with the sexual assault and

kidnapping of Complainant.[1] A jury found Richardson guilty of second degree

---

[1] Richardson was charged separately but the two cases were tried together.

sexual assault and sentenced him to eleven years' imprisonment. The jury also found Richardson guilty of third degree kidnapping and sentenced him to five years' imprisonment; however, the jury recommended this sentence be probated. In three issues on appeal, Richardson contends that the trial court erred by denying his motions for a mistrial based on improper statements made by the State during closing argument. We affirm.

## Background

On the evening of April 2, 2009, Complainant went to Metropolis, a nightclub. While Complainant was at the club, Richardson approached her and asked to borrow her phone to locate his phone because he had lost his. After returning her phone, Richardson walked away. As Complainant was leaving the nightclub, Richardson approached her from behind and held something to the back of her head, which, at the time, Complainant thought was a gun. He told Complainant he wanted to have sex with her and then ordered her into her vehicle. Richardson told Complainant to drive to an apartment complex close to where his mother lived and ordered her to park in the back. After she parked her car in the apartment parking lot, Richardson began touching her between her legs, licking her face, and biting her. Complainant told Richardson to stop and tried to push him off of her, but he continued. Complainant managed to reach her phone and, while keeping it out of Richardson's sight, tried to call her friend Marcus Cearcy for

2

help. Complainant heard Cearcy answer the phone and, at that point, Richardson realized she had her phone and tried to wrestle it away from her. Complainant then opened her car door and ran away, screaming for help. Richardson chased her and tackled her to the ground. They began to struggle and Richardson choked Complainant, hit her, and bit her on her arm. He then pulled her tights down and sexually assaulted her.

Complainant continued to struggle with Richardson until she was able to push him off of her and run away. At some point during the struggle, however, Complainant dropped her phone. She ran to a nearby IHOP restaurant where she saw several police vehicles in the parking lot. She told the police officers what had happened but, according to Complainant, the officers were not helpful and did not seem concerned. She called Cearcy from a phone at the restaurant and asked him to pick her up. According to Complainant, the police officers at IHOP did not inform her she needed to go to the hospital or offer to take her there.

The next day, Complainant's friend took her to Memorial Hermann Hospital where Ashley Huynh, a registered nurse, performed a sexual assault examination. Huynh observed bruising on Complainant's neck, which was consistent with strangulation; bruising on her arms; abrasions on her arms and breasts, which were consistent with human bites; and bruises and abrasions on her thighs and ankles.

3

Huynh also observed genital trauma. Huynh contacted the sex crimes unit of the Houston Police Department, who turned the case over to Officer Moreno.

During Moreno's investigation, he obtained Complainant's phone records, which showed Richardson's phone number was called from Complainant's phone several times the night of the sexual assault. Moreno discovered the address for Richardson listed with the phone company was an apartment complex adjacent to the apartment complex where Complainant was sexually assaulted. After obtaining this information, Moreno compiled a photo spread and showed it to Complainant, who identified Richardson as the man who sexually assaulted her.

At trial, Brenda Tristan, a resident of the apartment complex where Complainant was attacked, testified that she was awakened by someone screaming for help. She looked out her window and saw a woman being attacked. Tristan testified that she could hear the woman screaming, "Leave me alone." She testified that the attacker was straddling the woman and hitting her. She saw the attacker pull down an article of the woman's clothing as the woman was trying to fight him off. Tristan testified that she called 911 and told the dispatcher that a woman was being attacked.

A second witness, Kim Benson, also testified that she saw two people, a man and a woman, on the ground. She saw the woman on her stomach and the man sitting on her back straddling her. To Benson, it appeared that the man was patting

4

the woman down for something and once he found what he was looking for, he left. She testified that they were both fully clothed. Benson explained that she initially grabbed her phone to call 911 but did not because the woman did not appear to be in any danger. However, she testified that she only caught a glimpse of what happened.

Cearcy also testified that he received a call from Complainant around 2:00 a.m. on the morning of the assault. He testified that he did not actually speak with Complainant, but he could hear her voice and a man's voice in the background. He testified that Complainant sounded like she was in distress because she was crying and screaming, and he heard her say things like "Get off me," and "Don't touch me."

Richardson objected to three comments made by the prosecutor during the State's closing argument. The trial court sustained these objections and granted Richardson's request for instructions to disregard each of the comments. However, the trial court denied Richardson's requests for a mistrial, which he made after each of the three comments. The jury returned a guilty verdict on both the sexual assault and the kidnapping charges. This appeal followed.

## Discussion

Richardson raises three issues on appeal relating to comments made during the State's closing argument. First, Richardson contends that the trial court erred

5

in denying his motion for a mistrial because the State's comment that there are "different rules for the prosecution" violated his right to due process and invited the jury to speculate that they may not have been allowed to hear some of the State's evidence. Second, Richardson asserts that the trial court erred by denying his motion for a mistrial following the State's improper comments that struck at the defendant over the shoulder of his counsel by implying defense counsel would seek to introduce perjured testimony from the defense investigator. Finally, Richardson maintains that the trial court erred by denying his motion for a mistrial after the State improperly mentioned in closing argument a photo spread that was not in evidence.[2]

## A.    Applicable Law

In cases where the trial court sustained the defense objection and granted the requested instruction to disregard, as occurred here, the only adverse ruling to be reviewed is the trial court's denial of the motion for mistrial. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). "A mistrial is the trial court's remedy for improper conduct that is "so prejudicial that expenditure of further time and expense would be wasteful and futile."" *Id.* (quoting *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999)). A mistrial is required only in extreme circumstances

---

[2]    Although Richardson presents only two issues in his brief, he is challenging three rulings by the trial court denying his motions for a mistrial. For clarity, we treat each denial of Richardson's motion for mistrial as a separate issue on appeal.

where the prejudice is incurable. *Id.* (citing *Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003)). We review the trial court's refusal to grant a mistrial for an abuse of discretion. *Id.*

"The law provides for, and presumes, a fair trial free from improper argument by the State." *Thompson v. State*, 89 S.W.3d 843, 850 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (citing *Long v. State*, 823 S.W.2d 259, 267 (Tex. Crim. App. 1991)). There are four areas of proper jury argument: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement. *Id.* (citing *Cifuentes v. State*, 983 S.W.2d 891, 895 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd)). "The arguments that go beyond these areas too often place before the jury unsworn, and most times believable, testimony of the attorney." *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008) (quoting *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973)). Arguments that reference matters outside of the evidence or matters that may not be reasonably inferred from the evidence are usually "designed to arouse the passion and prejudices of the jury and as such are highly inappropriate." *Thompson*, 89 S.W.3d at 850 (quoting *Borjan v. State*, 787 S.W.2d 53, 57 (Tex. Crim. App. 1990)). Additionally, argument that invites speculation is of great concern because "it leaves to the imagination of each juror whatever extraneous 'facts' may be needed to support a

7

conviction." *Id.* (quoting *Everett v. State*, 707 S.W.2d 638, 641 (Tex. Crim. App. 1986)). Also of concern are "final arguments that result in uninvited and unsubstantiated accusation of improper conduct directed at a defendant's attorney." *Mosley v. State*, 983 S.W.2d 249, 258 (Tex. Crim. App. 1998) (quoting *Orona v. State*, 791 S.W.2d 125, 128 (Tex. Crim. App. 1990)).

Errors involving "striking at a defendant over the shoulder of counsel" are analyzed under Texas Rule of Appellate Procedure 44.2(b), the harm standard for nonconstitutional errors. *Mosley*, 983 S.W.2d at 259. The same standard applies when we evaluate comments upon matters outside the record. *Martinez v. State*, 17 S.W.3d 677, 692 (Tex. Crim. App. 2000) ("Comments upon matters outside the record, while outside the permissible areas of jury argument, do not appear to raise any unique concerns that would require us to assign constitutional status . . . therefore [we] apply the standard of harm for nonconstitutional errors."). Nonconstitutional error "that does not affect substantial rights must be disregarded." TEX. R. APP. P. 44.2(b). Using the three-factor test articulated in *Mosley v. State* to determine whether the defendant's substantial rights were affected, we consider: (1) the severity of the misconduct; (2) the measures adopted to cure the misconduct; and (3) the certainty of conviction absent the misconduct. *Mosley*, 983 S.W.2d at 259; *Brown*, 270 S.W.3d at 572–73 (citing *Martinez*, 17

S.W.3d at 692–93).    We apply this analysis to each of the complained-of comments in turn.

**B.    "Different Rules for the Prosecution and Defense"**

In his first issue, Richardson maintains that the trial court erred in denying his motion for a mistrial because the State's comment that there are "different rules for the prosecution" suggested that the jury did not get to hear all of the State's evidence about Benson's credibility and invited the jury to speculate about what evidence might have been withheld or what other underhanded or improper tactics were employed by the defense.    Richardson contends this violated his right to due process.    The State responds that Richardson's first issue is not preserved for our review because his objection at trial does not comport with his argument on appeal.

During closing argument, the prosecutor suggested that Sonja Raffeet, an investigator hired by the defense, tainted Benson's testimony by telling Benson that Richardson was wrongly accused.    The prosecutor then told the jury that "different rules" apply to each side:

> [Benson] told you [Raffeet,] the investigator[,] came to her and said, "You need to help us with a man who's been wrongfully accused."  Well, when that happens, everything that [Benson] sees she perceives differently and she's just coming down here to help a man who's wrongfully accused.  But [Benson] told you she didn't see everything.
>
> And come on.  [Benson]'s able to identify [Complainant]?  You know, if we—if the prosecution did that, the defense would be raising

9

holy hell. There's different rules for the prosecution and the defense. We can't—

Richardson immediately objected, "That's out of line and out of the law."

To preserve a complaint for appellate review, a party must make a timely objection to the trial court stating "the grounds for the ruling . . . with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." TEX. R. APP. P. 33.1(a)(1)(A). The argument raised on appeal must comport with the specific objection made at trial, or error is waived. *Curiel v. State*, 243 S.W.3d 10, 19 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). "An objection preserves only the specific ground cited." *Marchbanks v. State*, 341 S.W.3d 559, 565 (Tex. App.—Fort Worth 2011, no pet.) (citing TEX. R. APP. P. 33.1(a)(1)(A)). And, ordinarily, an objection to "improper argument" is too general to preserve error unless the legal basis for the objection is obvious to the court and to opposing counsel. *Miles v. State*, 312 S.W.3d 909, 911 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd).

Richardson's arguments on appeal do not comport with the objection he presented to the trial court. Although he now claims the comment violated his right to due process, because it caused the jury to believe they had not heard all of the State's evidence and that the defense was permitted to use underhanded tactics, Richardson did not raise such a claim when he objected to the prosecutor's statement. Nor did he argue that this comment improperly placed before the jury

10

facts that were outside the record, thereby inviting the jury to speculate on matters not inferable from the evidence. Instead, he merely said that suggesting the parties are governed by different rules was "out of line and out of the law." The constitutional claim presented on appeal, therefore, is not preserved for our review. *See Marchbanks*, 341 S.W.3d at 565 (holding appellant's contention that State's jury nullification argument was improper was not preserved for appellate review because his arguments on appeal—State's jury argument struck at accused over the shoulder of his counsel and deprived him of constitutional and statutory protections—did not match his objection at trial, which was that jury nullification was undefined and outside the record); *see also Miles*, 312 S.W.3d at 911 (holding that appellant's objection to "improper argument" was too general and insufficient to preserve error where the trial court made no statements indicating it understood nature of objection).

We overrule Richardson's first issue.

## C. "Otherwise the Defense Attorneys Don't Come Back"

In his second issue, Richardson contends that the trial court erred by denying his motion for a mistrial following the State's improper comments that struck at the defendant over the shoulder of his counsel by implying defense counsel would seek to introduce perjured testimony from Raffeet. Again, the State responds that this issue is not preserved.

11

During the State's closing, the prosecutor argued that Raffeet tainted Benson's testimony by suggesting to Benson that Richardson was wrongfully accused. The prosecutor then attempted to cast doubt on Raffeet's claims that she did not prejudice Benson by describing Richardson as "wrongfully accused":

> And then what did Sonja Raffeet, the private investigator, say to you? No, she would never, never tell someone that. She would never tell someone, "Listen here about someone who's wrongfully accused." Because that would be inappropriate, and she knows it would taint. But let me tell you something. [Raffeet]'s got to make a living. She's got to get results. Otherwise the defense attorneys don't come back to her.

Following this last comment, Richardson objected saying, "That calls for speculation, and that's improper."

Richardson's arguments on appeal regarding the prosecutor's comments that Raffeet needed to "make a living" and "get results[,] [o]therwise the defense attorneys don't come back to her," are also not preserved. Richardson did not object to these comments on the ground that they were striking at the defendant over the shoulder of defense counsel by implying that defense counsel would seek to introduce perjured testimony from Raffeet. Rather, Richardson's complaints were that the comment called for "speculation" and constituted "improper" argument. Because Richardson did not object to the prosecutor's comments about Raffeet on the ground of striking at the defendant over the shoulder of defense

12

counsel, this argument is not preserved for our review. *See Marchbanks*, 341 S.W.3d at 565; *Miles*, 312 S.W.3d at 911.[3]

We overrule Richardson's second issue.

**D.     Reference to Photo Spread Not in Evidence**

In his last issue, Richardson asserts that the trial court erred by denying his motion for a mistrial following the prosecutor's improper argument relating to a photo spread that was not in evidence. As the prosecutor was attempting to cast doubt on Benson's in-court identification of Complainant, he suggested that when he showed Benson a photo spread containing Complainant during cross-examination, she was unable to identify Complainant:

> PROSECUTOR:  I could sit here and talk to you for another 30 minutes, but I won't.  And the bottom line is it's really easy for the defense to come in and bring in [Complainant] for Kim Benson to say, "Oh, yeah, that's her," and then when I show her a photo spread, then she couldn't pick out [Complainant].
>
> DEFENSE COUNSEL:  Objection, your Honor.  That's not in evidence. That was specifically not introduced.  The photo spread was not in evidence at the time.
>
> THE COURT:  That's sustained.  That exhibit was not admitted in front of the jury.

---

[3]     It is unclear from Richardson's brief whether he is also raising an argument in relation to these comments that the prosecutor was arguing outside of the evidence by injecting new and harmful facts not in the record.  To the extent this argument is raised in relation to these comments, we conclude it is not preserved because his "speculation" and "improper" argument objections at trial do not match the argument on appeal. *See Marchbanks*, 341 S.W.3d at 565.

PROSECUTOR: Judge—

DEFENSE COUNSEL: That's arguing outside the evidence. Ask the jury to disregard.

THE COURT: Hang on. Hang on. What's your—

DEFENSE COUNSEL: I ask the jury to disregard the last comment about this co-called photo spread.

THE COURT: Well, there was an exhibit that was shown to the witness. The exhibit was not admitted. So—

DEFENSE COUNSEL: Yes, ma'am, but he's commenting that that exhibit contained the—

THE COURT: Sustained.

DEFENSE COUNSEL: —Complainant.

THE COURT: That's sustained.

Richardson's argument that the prosecutor's reference to the photo spread improperly struck at him over the shoulder of counsel is likewise not preserved. He did not object to the prosecutor's comments about the photo spread on this ground, arguing instead that this was "outside the evidence." Because Richardson did not object to the prosecutor's comments about the photo spread on the ground that it struck at the defendant over the shoulder of defense counsel, this argument is not preserved for our review. *See Marchbanks*, 341 S.W.3d at 565.

However, to the extent that Richardson argues on appeal that the comments relating to Benson's inability to identify Complainant in the photo spread were

14

outside the evidence, this argument is preserved because he raised this specific objection at trial. When evaluating the harm resulting from comments about matters outside the record, we apply the standard of harm for nonconstitutional errors and consider: (1) the severity of the misconduct; (2) the measures adopted to cure the misconduct; and (3) the certainty of conviction absent the misconduct. *See Mosley*, 983 S.W.2d at 259; *Brown*, 270 S.W.3d at 572–73 (citing *Martinez*, 17 S.W.3d at 692–93).

First, with respect to the severity or magnitude of the misconduct, the record reflects that this reference to the photo spread was brief in the context of the State's entire argument. The prosecutor focused on other aspects of Benson's testimony such as her admissions that she did not see everything and that she was initially concerned enough to almost call 911. Even if the prosecutor's reference to the photo spread that was not in evidence was improper, the magnitude of the misconduct was relatively minor because Benson's testimony supported the prosecutor's statement, even though the photo spread was not admitted as an exhibit. *See, e.g.*, *Nickerson v. State*, 312 S.W.3d 250, 265–66 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (finding that prosecutor's statements during closing were inappropriate and outside the evidence but had relatively minor prejudicial effect).

Second, with respect to the curative measures, the trial court sustained Richardson's objection and instructed the jury to disregard. In most circumstances, an instruction to disregard the remarks will cure the error. *Kibble v. State*, 340 S.W.3d 14, 24 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (citing *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000)). Where the trial court instructed the jury to disregard, only offensive or flagrant error warrants reversal. *Id.* (citing *Hawkins*, 135 S.W.3d at 79).

Third, with respect to the certainty of the conviction absent the misconduct, the evidence supporting Richardson's kidnapping and sexual assault convictions "is sufficiently strong to assure us of a high certainty that the jury would have found [him] guilty even had the improper argument been excluded." *Id.* (citing *Mosley*, 983 S.W.2d at 259). The record reflects that Complainant identified Richardson as her attacker from a photo spread. In addition, although Tristan could not positively identify either Complainant or Richardson, she testified that she witnessed a woman being attacked by a man in a similar manner to Complainant's description of the assault. Huynh testified that she observed abrasions, bite marks, and genital trauma and that these injuries were consistent with Complainant's description of the assault. Cearcy testified that, when Complainant called him that night, he heard her struggling and shouting with a man. Phone records also indicated Richardson called his number from

16

Complainant's cell phone several times the night of the assault, corroborating Complainant's testimony that Richardson used her cell phone to try to locate his own phone at the club. Finally, Richardson's address on file with the telephone company was for an apartment complex adjacent to the apartment complex where Complainant was attacked, corroborating Complainant's testimony that Richardson told her to drive to an apartment complex close to whether his mother lived.

Balancing the *Mosley* factors, we hold that the prosecutor's comments about Benson's inability to identify Complainant in a photo spread that was not in evidence did not affect Richardson's substantial rights such that reversal is warranted, and that the trial court did not abuse its discretion by denying Richardson's motion for a mistrial.

We overrule Richardson's third issue.

## Conclusion

We affirm the judgment of the trial court.

Rebeca Huddle
Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).

17