**618-15**

ORIGINAL

RECEIVED IN
COURT OF CRIMINAL APPEALS

JUL 24 2015

Abel Acosta, Clerk

CASE NO. PD-0618-15

IN THE COURT OF CRIMINAL APPEALS

FOR THE STATE OF TEXAS AT AUSTIN

---

JESUS MARCIAL LUNA JR.,                        Petitioner

                          Vs.

THE STATE OF TEXAS,                            Respondant.

---

### PETITIONER'S PETITION FOR DISCRETIONARY REVIEW

---

On Petition for Discretionary Review from the Eighth Court of Appeals in No. 08-13-00084-CR Affirming conviction in No. 20110-D05260 from the 243rd Judicial District Court of El Paso County, Texas.

FILED IN
COURT OF CRIMINAL APPEALS

JUL 24 2015

Abel Acosta, Clerk

ORAL ARGUMENT REQUESTED

Jesus Marcial Luna Jr.

TDCJ #01883000-Coffield unit

2661 FM 2054

Tennessee Colony, Texas, 75884

No Phone.

Pro se.

## IDENTITY OF JUSTICES, JUDGE, PARTIES, AND COUNSEL

JUSTICES: Before McClure, C.J., Rodriguez, and Hughes,JJ. Opinion by Steven L. Hughes: 500 E. San Antonio Ave., Suite 1203, El Paso, Tx. 79901-2408.

TRIAL JUDGE: Honorable Luis Aguilar: District Court address-500 E. San Antonio, Ste. 103, El Paso, Tx. 79901.

PETITIONER-APPELLANT: Jesus Marcial Luna Jr.: see cover page.

TRIAL COUNSEL FOR PETITIONER: Mr. Francisco Macias: 100 N. Campbell St., El Paso, Tx. 79902.

APPELLATE COUNSEL FOR PETITIONER: Mr Louis E. Lopez: 416 N. Stanton St., Suite 400, El Paso, Tx. 79901.

RESPONDANT-APPELLEE: The State of Texas.

DISTRICT ATTORNEY OF EL PASO COUNTY: Mr. Jaime Esparza: 500 E. San Antonio, Room 200, El Paso, Tx. 79901.

TRIAL COUNSEL FOR THE STATE: Mr. Kyle Myers and Ms. Myrna Pages: Assistanct District Attorney's: 500 E. San Antonio, Room 200 El Paso, Texas 79901.

APPELLATE COUNSEL FOR THE STATE: Mr. Tom Darnel: Assistant District Attorney of El Paso County: 500 E. San Antonio Room 200 El Paso, Tx. 79901.

## TABLE OF CONTENTS

Cover        i

Identity of Justices, Judge, Parties, and Counsel    ii

Table of Contents    iii

Index of Authorities    v

Statement Regarding Oral Argument    vi

Statement of the Case    vii

Statement of Procedural History    viii

Statement of Jurisdiction    ix

Questions for Review:    (Pages 1-8); x

Is the Eighth District Court of Appeals' holding that
there was sufficient evidence to establish the use of a
knife as a deadly weapon erroneous, when there is a rea-
sonable doubt that Petitioner had a knife, and does this
holding conflict with this Honorable Court's decision in
Brook v. State and Hart v. State?

Page 1

Was the Eighth District Court of Appeals' decision unrea-
sonable for appling the Creten Liar's Theory in Goodman
v. State, when the evidence clearly establishes a reason-
able doubt that Petitioner even had a knife, and does this
misapplied holding conflict with this Honorable Court's
decision in Brook v. State?

Page 6

Prayer for Relief    Page 9

Inmate Declaration    Page 10

Proof of Mailing                                          Page 11

Appendix: see motion affixed.

## INDEX OF AUTHORITIES

**CASELAW:**

Brook v. State, 323 S.W.3d 893 (Tex.Crim.App. 2010)

Page x,1,2,5,6,8

Goodman v. State, 66 S.W.3d 283 (Tex.Crim.App. 2001)

Page 6,8

Hart v. State, 89 S.W.3d 61 (Tex.Crim.App. 2002)

Page x,1,2

Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, L.Ed.2d 560 (1979)          Page 2

Luna v. State, No. 08-13-0084-CR, Slip Opinion (Tex.App. --El Paso, April 29, 2015)          Page viii

Tucker v. State, 274 S.W.3d 616 (Tex.Crim.App. 1991)

Page 1

**STATUTORY LAW:**

Texas Penal Code, sec. 71.02(a)          Page 2

Texas Penal Code, sec. 31.03(a)          Page 2

Texas Rules of Appellate Procedure:

9.3(b)          Page viii

66.3(a)          Page ix,5,8

66.3(f)          Page ix,8

**OTHER:**

El Paso Police Report #11303021 (VC1519):

taken by Robert Ontiveros Jr. (#1924) on Nov. 1, 2011

Page 4

taken by Andres Sanchez (#883) on Nov. 02, 2011: Page 4

## STATEMENT REGARDING ORAL ARGUMENT

Petitioner believes that oral argument will be benificial to this Honorable Court of Criminal Appeals becuase of the ever changing state of the case law, and do to the complexity of the facts in Petitioner's case at hand.

STATEMENT OF THE CASE

The Petitioner was charged in a single indictment: Count I, Engaging in Organized Criminal Activity, and Count II, Aggravated Assualt with a Deadly Weapon. (Clerk's Record, page 3-4) On the fifteenth day of March, 2013, the Petitioner proceeded too trial. (RR2, pg. 1).

On March 20, 2013, a jury found the Petitioner guilty on both counts. (CR, pgs 129-130). After affirmatively finding the enhancement paragraphs true, the jury subsequently assessed a punishment of 60 years of incarceration and a $5,000 fine. (CR, pg. 144-145). The sentences are concurrently ran. (CR, pg 150).

## STATEMENT OF PROCEDURAL HISTORY

On April 29, 2015, the Eighth District Court of Appeals Affrimied the Petitioner's convictions, handed down by Honorable Justice Steven L. Hughes.  See <u>Luna v. State</u> No. 08-13-00084-CR, Slip Opinion at page 14 (Tex.App. --El Paso, April 29, 2015.

The Petitioner did not file a motion for rehearing within the Eighth District Court of Appeals, that Petitioner knows of.

The Petitioner sought for an Extention of time to file his Petition for Discretionary review within this Honorable Court of Criminal Appeals, and this Honorable Court granted the motion and extended the deadline to July 28, 2015.  See <u>Luna v. State</u>, No. PD-0618-15, postcard (Tex.Crim.App. May 22, 2015)(also granting Petitioner's motion to suspend rule 9.3(b) of the Texas Rules of Appellate Procedure).

The Petitioner files his Petition for Discretionary review on or before July 28, 2015.

## STATEMENT OF JURISDICTION

Pursuant to the Texas Rules of Appellate Procedure, 66.3, Petitioner conjures the following rules, but not limited to, for this Honorable Court of Criminal Appeals to consider in It's decision to grant this Petition infra:

1· Pursuant to rule 66.3(a), Petitioner believes that the Eighth District Court of Appeals' holding is in conflict with the other court of appeals, including this Honorable Court's holdings that needs to be resolved by this Honorable Court.

2· Pursuant to rule 66.3(f), Petitioner believes that the Eighth District Court of Appeals unreasonably applied the facts of his case to the standing law that calls for this Honorable Court's exercise of It's power of supervision.

1. Is the Eighth District Court of Appeals' holding that there was sufficient evidence to establish the use of a knife as a deadly weapon erroneous, when there is a reasonable doubt that Petitioner had a knife, and does this holding conflict with this Honorable Court's decision in Brook v. State and Hart v. State?

2. Was the Eighth District Court of Appeals' decision unreasonable for appling the Creten Liar's theory in Goodman v. State, when the evidence clearly establishes a reasonable doubt that Petitioner even had a knife, and does this misapplied holding conflict with this Honorable Court's decision in Brook v. State?

## QUESTION ONE RESTATED

Is the Eighth District Court of Appeals' holding that there was sufficient evidence to establish the use of a knife as a deadly weapon erroneous, when there is a reasonable doubt that Petitioner had a knife, and does this holding conflict with this Honorable Court's decision in Brook v. State and Hart v. State?

The Eighth District Court of Appeals concluded that a rational jury could have found Petitioner commited **aggravated assault with a deadly weapon** with the intent to participate as a member of Barrio Azteca, a criminal street gang. See Luna v. State, No. 08-13-00084-CR, pg 6 (Tex.App. --El Paso, April 29, 2015)(slip Opinion)(emphasis added).

The Eighth District Court of Appeals' rationale for this holding is that Gomes (the complainant) identified Petitioner as the individual who confronted him in the restroom and twice stabbed him and had shown his scars from multiple stab wounds. Id. at 9 (citing Tucker v. State, 274 S.W.3d 616, 619 (Tex.Crim.App. 1991)(a victim's injuries alone may be sufficient to find that a deadly weapon was used)).

Because the Petitioner's counsel did not present an argument or analysis regarding the sufficiency of the evidence, the Petitioner presents the following in his attempt to secure his constitutional rights infra:

In Brook v. State, this Honorable Court provided two avenues to establishes a legal insufficiency within Texas: either (1) the

record contains no evidence, or merely a "modicum" of evidence probative of an element of the offense; or (2) the evidence conclusively establishes a reasonable doubt. Id. 323 S.W.3d 893, 895 (Tex.Crim.App. 2010)(referring to Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). Pertaining to the Petitioner's indictment, and the decision held in Hart v. State, this Honorable Court gave a two pronged mental state requirement to establish sufficient evidence to support an organized criminal activity. Id. 89 S.W.3d 61, 63-64 (Tex.Crim.App. 2002).

Because the Petitioner avers that the Eighth District Court of Appeals failed to follow the first prong within Hart, the Petitioner shows only the first mental state requirement as: "One mental state requirement in organized criminal activity is included in the commission of one of the enumerated offenses (here in this case it is aggravated assualt with a deadly weapon). Tex. Pen. Code § 71.02(a). For example, if the enumerated offense is theft, the state must prove that the appellant intended to deprive the owner of property as part of proving the underlying enumerated offense. Tex Penal code § 31.03(a)." See Id. 89 S.W.3d at 63-64. Like Hart, the State failed to prove that the Petitioner had a weapon, and the modicum of the evidence that does show that Petitioner does exhibit a knife is highly contradicted with other evidence, establishing a conclusive reasonable doubt that Petitioner exhibited the alleged knife.

Even though the jury is the sole judges of the facts and evidence presented at trial, Gomez's testimony reasonably contradicts itself, as a whole, that produces a conclusive reasonable doubt that the aggravated assault even occurred. Gomes (the Complainant), testified on direct that Petitioner pulled out a knife, with the look that it had to be done, and stabbed him twice (RR3, 221-222); nevertheless, the person that searched everyone before entering the club, testified that Giant was the one with a knife, and the Petitioner did not have a knife at all (RR3, 111-113; 135-136). In fact, Mr. Perez testified that he himself pushed the Petitioner outside while he was breaking up the fight (RR3, 139). If the Petitioner had a knife in his possession during the fight, Mr. Perez would have testified (to the jury) to the same. This contradiction ~~alone~~ rises to a conclusive reasonable doubt on its own!

Gomez testified that he was just having a good time, and all of a sudden Giant, Matt along with the Petitioner, started trouble with him becuase of his tattoo's and his false relation to another gang (RR3, 221-end). However, no other evidence at trial supports this conclusory statement. Contrarily, Gomez also testified that he was the one that was starting the fights with a bunch of people in the club (RR4, 22). Mr. Ebarguen corroborate. this evidence and testified that Gomez has an argument at the bar with Giant and Matt, but not with the Petitioner.

Further, other people in the club sworn in their testimonies

(to the police) to the same. Although Ms. Lorraine Fragoso and Janice Soto never testified, their testimony in the police's supplemental report is crucial to shine light on the evidence to prove that Gomez had a knife and that Gomez was the aggressor:

- On Nov. 01 2011, Lorraine Fragoso sworn that "Giant walked back from the restroom and came and hugged me. He sat down at which time he saw that Matt was arguing with the guy across the bar. Matt looked overwhelmed and intimidated so Giant looked at me and told me that he would be right back. I saw that Giant walked over to Matt and the guy he was arguing with, I saw that Giant was talking to the guy with tattoos on his face with a calm demeanor and with respect. This is when I saw that the guy with the tattoos on his face grabbed a glass beer bottle and smashed it on Giants face." See Report number 11303021 (VC1519) taken by Robert Ontiveros Jr. PD#1924 (Nov.1, 2011).

- On Nov. 02, 2011, Janice Soto corroborates this evidence when she asked Giant the following: "I asked him (Giant) what had happened. "G" (Giant) told me that he had been hit to the face with a bottle by some guy and that this same guy also tried to stab him. "G" said he tried to take the knife away form this guy and cut his hands." See Report Number 11303021 (VC1519) taken by Andres Sanchez. Pd # 883 (Nov. 02, 2011).

A very good question to ask this Honorable Court is why did Gomez

never mention that he had a knife when other people said he did, and why would he never mention that he smashed the bottle over Giant's head? Becuase Gomez lied to the jury and this Honorable Court must infer that Gomez's testimony has way to many contradictions within his very own testimony. To support Gomez's testimony would be calling the rest of the very witnesses, that was there while the fight went down, a liar!

One of the most important pieces of evidence that was introduced at trial was Mr. Perez's testimony, when he honestly testified that Petitioner only tried to punched and successfully kicked Gomez along with everyone else (RR3, 116-117). Axiomly, every other witness (except for Gomez) testified that it was Giant that had the knife and Petitioner never did obtain one or have one. In fact, the very knife that was admitted into the evidence was never tested and was not linked to Petitioner at all. The very knife was Giant's knife, not Petitioner's. As a whole, the Eighth District Court of Appeals unreasonably concluded that the decision in Hart was satified, despite the showing that there is a conclusive reasonable doubt that Petitioner committed an aggravated assault. See Texas Rules of Appellate Procedure 66.3(a); <u>Brook v. State</u>, 323 S.W.3d 893, 895 (Tex.Crim. App. 2010).

The Petitioner implores this Honorable Court to view the trial (without Gomez's conflicting testimony) and this court will see clearly that the evidence establishes that Petitioner commit-

ted a simple assault with the intent to particapate as a gang member.

Finally, the evidence at trial conclusively establishes a reasonable doubt that Petitioner committed aggravated assault with a deadly weapon with teh intent to participate as a member of Barrio Aztaca. Brook v. State, 323 S.W.3d 893, 895 (Tex.Crim. App. 2010). Therefore, Petitioner implores this Honorable Court to grant this question for review and relief.

QUESTION TWO RESTATED

Was the Eighth District Court of Appeals' decision unreasonable for appliing the Creten Liar's Theory in Goodman v. State [66 S.W.3d 283, 286 (Tex.Crim.App. 2001)], when the evidence clearly establishes a reasonable doubt that Petitioner even had a knife, and does this misapplied holding conflict with this Honorable Court's decision in Brook v. State [323 S.W.3d 893 (Tex.Crim App. 2010)]?

The Eighth District Court of Appeals held that Gomez testified to direct evidence that Defendant stabbed him twice. See Luna v. State, No. 08-13-0084-CR, Pg 11 (Tex.App. El Paso, April 29, 2015)(slip Opinion).

Under the Creten Liar's Theory it is true that direct evidence of "X" fact is always legally sufficient to support a finding of "X" fact. Goodman v. State, 66 S.W.3d 283, 286 (Tex.Crim. App. 2001). But what happens to the direct evidence ~~evidence~~ if

it becomes false? Would the Creten Liar's Theory be applied to support the convictions of Petitioner's case? Axiomly it would not.

Mr Gomez' direct testimony produced a conclusive reasonable doubt that the Petitioner stabbed him becuase, throughout his entire testimony, Gomez highly contradicted his very own testimony as shown in question one surpa. Not only was Gomez' testimony contradicting within itself, but the other evidence at trial solely supports the main fact that it was Giant that had a knife, and Petitioner (at not one moment) had possession of a knife. This very inference could be doubted, only if, one other witness contradicted Gomez' theory about the possession of a knife.

Instead, when every witness (in the club that night) testified at trial, and in their sworn police statements, showing this Honorable Court that Petitioner never had a knife casts serious doubt that Petitioner stabbed Gomez at all. Should the Petitioner be punished behind Giant's very actions that everyone else had witnessed to? Not at all! Could the State produce any other evidence showing that Petitioner had a knife? No! One's contradicting testimony is not enough to prove beyond a reasonable doubt that Petitioner had a knife, when all the other evidence proves this to be a lie.

Again, the State's Exhibit has shown that the knife did not have Petitioner's finger prints on it. If the Petitioner used the knife, why would it not have Petitioner's finger prints on

the exhibited knife at trial? Because Petitioner never had possession of a knife at any moment that night and this is plain from the record.

Another grave doubt in Gomez' testimony, is that Gomez himself told the jury that he voluntarily ingested some illegal drug (with his beer out of many) to get high. RR4, pg 4-9. Truly everyone knows that an illegal drug with alcohol highly diminishes one's ability to recollect the facts of what is going on around them. While it is true that Gomez suffered from multiple stab wounds, this Ingenuous Court should not ignore everyone else's testimony (including Giant himself) that proves it was Giant that caused the multiple stab wounds to Gomez. Due to this confusion of Gomez being high, drunk, and not able to reasonably recollect his facts costed Petitioner to be falsely imprisoned.

In this case, the call for justice is not served, when there strongly stands a conclusive reasonable doubt that Petitioner even had a weapon at all! Therefore, is the Eighth District Court of Appeala' holding in conflict with this Honorable Court's holding in Brook v. State [323 S.W.3d 893 (Tex.Crim.App. 2010)], and was the Creten Liar's theory in Goodman [v. State, 66 S.W.3d 283, 286 (Tex.Crim.App. 2001)], unreasonablly applied to the true facts of this case at hand? See Tex.R.App.Proc. 66.3(a),(f).

Finally, Petitioner implores this Honorable Court to grant this question for review and relief.

Petitioner prays that this Honorable Court will grant his Pitition for discretionary review for review and for relief.

Luna, Jesus Marcial Jr.

TDCJ No. 01883000

Coffield unit

2661 FM 2054

Tenn.Colony, Tx. 75884

Pro se.

I, Jesus Luna Marcial Jr., TDCJ #1883000, being incarcerated in the TDCJ-CID Coffield unit in Anderson County, Texas, declares that the foregoing is true and correct under the penalty of perjury.

EXECUTED THIS DAY OF JULY ____, 2015.

LUNA, Jesus Marcial Jr.

TDCJ No. 1883000

Coffield unit

2661 FM 2054

Tenn.Colony, Tx. 75884

Pro se.

I, Jesus Marcial Luna Jr., TDCJ #1883000, being incarcerated in the TDCJ-CID Coffield unit in Anderson County, have placed his Petition for Discretionary Review into the internal mailing system on July 20 , 2015.

This is true under the penalty of perjury. Executed on this day of July 20 , 2015..

Jesús Marcial Luna, Jr.

TDCJ No. 1883000

Coffield unit

2661 FM 2054

Tenn.Colony, Tx. 75884

Pro se.



COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| JESUS MARCIAL LUNA, JR., | § | No. 08-13-00084-CR |
| Appellant, | § | Appeal from the |
| v. | § | 243rd District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20110D05260) |
| | § | |

## <u>OPINION</u>

Appellant Jesus Marcial Luna was charged with engaging in organized criminal activity as a member of a criminal street gang (Count I) and aggravated assault with a deadly weapon (Count II). On appeal, he challenges the sufficiency of the evidence to support his conviction for each offense and complains the trial court erroneously failed to submit assault as a lesser-included offense of aggravated assault. We conclude the evidence was sufficient to support the jury's verdict on both counts, and that the trial court did not abuse its discretion in refusing to submit assault as a lesser-included offense. Accordingly, we affirm the trial court's judgment.

## BACKGROUND

This case arises from the stabbing and shooting of Jesus Gomez by members of the Barrio Azteca gang at a bar known as "Shooters." Jesus Gomez had once been a member of the Surenos

gang and Mexican Mafia gang. Gomez, whose face is heavily tattooed, testified he is often identified as an active gang member. On October 30, 2011, he went to Shooters to have a drink with a co-worker. When Gomez was in the restroom, Appellant and Juan "Giant" Villegas – both of whom were identified as Barrio Azteca gang members – blocked the door and informed Appellant he was on "their land." Gomez denied he was a Sureno and was allowed to leave the restroom.

Later that evening, Appellant, "Giant," and others, some with knives, approached Gomez. Gomez saw Appellant was holding a knife and asked Appellant whether he was going to "shank" him. Gomez testified Appellant stabbed him twice, and when everyone began fighting, he felt himself being stabbed again. Gomez began "throwing punches," and felt something trip him; he fell "sitting down," and then grabbed someone's knife, which sliced his fingers, and began "hacking away." He remembered being punched and kicked before blacking out. Emergency medical personnel and police were dispatched to the bar, and Appellant, "Giant," and another Barrio Azteca member, Matthew Barajas, were arrested for the attack on Gomez.

Appellant was charged in a two-count indictment. Count I alleged Appellant, with the intent to participate as a member of the Barrio Azteca criminal street gang, committed aggravated assault with a deadly weapon, a knife. *See* TEX. PENAL CODE ANN. § 71.02(a)(1)(West Supp. 2014). Count II alleged Appellant committed aggravated assault with a deadly weapon by intentionally, knowingly, or recklessly causing bodily injury to Gomez by stabbing him with a knife.[1] *See* TEX. PENAL CODE ANN. § 22.02(a)(1)(West 2011). The jury found Appellant guilty on both counts.

---

[1] The indictment also alleged aggravated assault by use of a firearm. That charge was not submitted to the jury.

2

## DISCUSSION

### Sufficiency of the Evidence of Engaging in Organized Criminal Activity

In Issue One, Appellant contends the evidence is legally insufficient to support his conviction for engaging in organized criminal activity because the State failed to prove that he collaborated with a group in a continuing course of criminal activity. Appellant concedes the evidence proved he committed a single act of assault with others "who happen to belong to the same street gang." But, he contends the evidence failed to establish he and the others conspired to commit other crimes together in a continuing course of criminal activity. Appellant's argument is misplaced.

A person commits the offense of engaging in organized criminal activity "if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination or as a member of a criminal street gang, the person commits or conspires to commit" one or more specified criminal acts. TEX. PENAL CODE ANN. § 71.02(a). Appellant's contention that the State was required to prove a continuing course of criminal activity is based on the statutory term "combination." Section 71.01(a) defines a "combination" as three or more persons who collaborate in carrying on criminal activities. TEX. PENAL CODE ANN. § 71.01(a)(West 2011). The Court of Criminal Appeals has construed this language to require proof of a "continuing course of criminal activities." *Nguyen v. State*, 1 S.W.3d 694, 697 (Tex.Crim.App. 1999). It involves more than the intent to merely commit an enumerated offense, a plan to commit a single act, or proof of working jointly to commit a single crime—it requires proof of continuity. *Hart v. State*, 89 S.W.3d 61, 63–64 (Tex.Crim.App. 2002); *Nguyen*, 1 S.W.3d at 696–97.

The State, however, did not charge Appellant with participating "in a combination or in the

3

profits of a combination." Rather, the State's indictment alleged that Appellant, "as a member of a criminal street gang," committed aggravated assault with a deadly weapon. Participating "in a combination" or "as a member of a criminal street gang" are alternative ways of proving the offense of engaging in organized criminal activity. Under the plain language of Section 71.02, the State can establish a defendant engaged in organized criminal activity if it proves the defendant committed the underlying criminal offense with the intent to establish, maintain, or participate (1) in a combination, or (2) in the profits of a combination, or (3) as a member of a criminal street gang. *Curiel v. State*, 243 S.W.3d 10, 15 (Tex.App – Houston [1st Dist.] 2007, pet. ref'd).

Accordingly, the State was required to prove only that Appellant committed aggravated assault with the intent to participate as a member of a criminal street gang; it was not required to prove that Appellant intended to act in a combination or in the profits of a combination. *See id.* (State was required to show appellant had the intent to establish, maintain, or participate as member of a criminal street gang, but was not required to show appellant intended to act in a combination, or in the profits of a combination, because those are alternative ways of proving the offense of engaging in organized criminal activity). It follows that the State also was not required to prove that Appellant collaborated with others in a continuing course of criminal activity.

Appellant presents no argument or analysis regarding the sufficiency of the evidence to support his conviction of engaging in organized criminal activity "as a member of a criminal street gang." The State argues Issue One is inadequately briefed, presents nothing for our review, and has been waived. The State correctly asserts that we are barred from crafting Appellant's legal arguments for him. For purposes of this decision, however, we will assume the issue has not been waived, and will proceed to examine the sufficiency of the evidence to support Appellant's

4

conviction for engaging in organized criminal activity as a member of a criminal street gang, as indicted.

## Standard of Review

In conducting our legal sufficiency review, we view the evidence in the light most favorable to the verdict to determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the offense beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex.Crim.App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). We recognize that "our role is not to become a thirteenth juror. This Court may not re-evaluate the weight and credibility of the record evidence and thereby substitute our judgment for that of the fact-finder." *Isassi v. State*, 330 S.W.3d 633, 638 (Tex.Crim.App. 2010) (quoting *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex.Crim.App. 1999)). Rather, we defer to the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Isassi*, 330 S.W.3d at 638. This same standard applies equally to circumstantial and direct evidence. *Id.*; *Laster v. State*, 275 S.W.3d 512, 517–18 (Tex.Crim.App. 2009). "Our role on appeal is restricted to guarding against the rare occurrence when a factfinder does not act rationally[.]" *Laster*, 275 S.W.3d at 517; *see Isassi*, 330 S.W.3d at 638. We will uphold the verdict unless a rational fact finder must have had reasonable doubt as to any essential element. *Laster*, 275 S.W.3d at 517-18.

## Analysis

We measure the sufficiency of the evidence by the elements of the offense as defined by a

hypothetically correct jury charge.[2] *Villarreal v. State,* 286 S.W.3d 321, 327 (Tex.Crim.App. 2009) (citing *Malik v. State,* 953 S.W.2d 234, 240 (Tex.Crim.App. 1997)). Under a hypothetically correct jury charge, the State was required to prove beyond a reasonable doubt that Appellant committed aggravated assault[3] with a deadly weapon,[4] a knife, "with the intent[5] to establish, maintain, or participate ... as a member of a criminal street gang." *See* TEX. PENAL CODE ANN. § 71.02(a); *Curiel,* 243 S.W.3d at 16. Based on the evidence and the reasonable inferences therefrom, we conclude a rational jury could have found Appellant committed aggravated assault with a deadly weapon with the intent to participate as a member of Barrio Azteca, a criminal street gang.

First, the evidence was sufficient to show that Barrio Azteca was a criminal street gang. The Texas Penal Code defines "criminal street gang" as three or more persons having a common identifying sign or symbol or an identifiable leadership who continuously or regularly associate in

---

[2] A hypothetically correct jury charge accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Villarreal,* 286 S.W.3d at 327. The law, as authorized by the indictment, means the statutory elements of the charged offense as modified by the charging instrument. *See Curry v. State,* 30 S.W.3d 394, 404 (Tex.Crim.App. 2000).

[3] Aggravated assault is one of the enumerated offenses that can form the basis of engaging in organized criminal activity. TEX. PENAL CODE ANN. § 71.02(a)(1)(West Supp. 2014). A person commits aggravated assault if the person commits assault as defined in Section 22.01 and: (1) causes serious bodily injury to another, or (2) uses or exhibits a deadly weapon during the commission of the assault. *Id.* at § 22.02(a)(1),(2)(West 2011). A person commits assault if the person intentionally, knowingly, or recklessly causes bodily injury to another. *Id.* at § 22.01(a)(1)(West Supp. 2014). "Bodily injury" is defined as "physical pain, illness, or any impairment of physical condition." *Id.* at § 1.07(a)(8)(West Supp. 2014). "Serious bodily injury" is defined as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* at § 1.07(a)(46).

[4] A "deadly weapon" means "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* at § 1.07(a)(17)(B).

[5] Neither the indictment nor the jury charge required proof of intent to participate as a member of a criminal street gang. In our review of the sufficiency of the evidence, however, we will determine whether the evidence is legally sufficient to prove intent. *See Fisher v. State,* 887 S.W.2d 49, 55–58 (Tex.Crim.App. 1994), *overruled on other grounds, Malik v. State,* 953 S.W.2d 234 (Tex.Crim.App. 1997) (where indictment and jury charge are similarly defective, hypothetically correct jury charge should allege all elements as set forth in the controlling penal statute in order not to unconstitutionally broaden basis on which State may obtain conviction).

6

the commission of criminal activities.   TEX. PENAL CODE ANN. § 71.01(d).

Detective Andres Sanchez, a 25-year veteran of the El Paso Police Department, who had been embedded in the gang unit for more than 12 years at the time of trial, testified that Barrio Azteca is the primary gang he investigates.   He described the history of the Barrio Azteca gang, which was created in 1985 as a prison gang and now has street operations, and explained its ties to El Paso, where the gang is also known as "El Chuco" and whose members refer to themselves as "Indios."   The gang has a constitution as well as a command structure consisting of captains, lieutenants, sergeants, soldiers, prospects, and "esquinas," who are persons who assist the gang. In 1993, the Texas Department of Corrections designated Barrio Azteca as a "true prison gang or a security threat group."   Detective Sanchez testified that the members of Barrio Azteca are active in drug trafficking, extortion, and money laundering.   Barrio Azteca members commonly use and are identified by Aztec symbols such as Aztec gods, goddesses, and headpieces, the sun, pyramids, feathers, and the number "21" (representing the letters "B" for "Barrio," and "A" for "Azteca"), which are evident in imagery found in their homes and on their persons, often in the form of tattoos.

This evidence was sufficient to establish that Barrio Azteca is a criminal street gang.   *See Gomez v. State*, No. 08-12-00001-CR, 2014 WL 3408382, at *11 (Tex.App. – El Paso July 11, 2014, no pet.) (not designated for publication) (noting that "the FBI considers [Barrio Azteca] the most problematic gang in the El Paso region").

Second the evidence was sufficient to allow the jury to reasonably infer that Appellant intended to participate as a member of Barrio Azteca in assaulting Gomez.   Detective Sanchez discussed the criteria by which an individual may be identified as belonging to a criminal street

7

gang and, based on that criteria, identified Appellant, Juan "Giant" Villegas, and Matthew Barajas, as Barrio Azteca gang members. Detective Sanchez specifically determined Appellant was a member of the Barrio Azteca gang based on: Appellant's non-judicial admission that he is a member of a criminal street gang; his identification as a member of a criminal street gang by another reliable individual; evidence that he has on five separate occasions frequented a documented area of a criminal street gang and associated with known criminal street gang members; his use of hand signals in more than an incidental manner; his relevant tattoos; and that Appellant has four times been arrested or taken into custody with known gang members.

Among the many photographs the jury had before it were photographs of Appellant using a Barrio Azteca "21" hand sign and of his tattoos bearing Barrio Azteca imagery. The jury also heard circumstantial evidence that Appellant had been housed with other Barrio Azteca gang members after he was booked into the El Paso County Detention Facility.

Detective Sanchez also opined that the assault on Gomez was gang related because there were "three confirmed Barrio Azteca members associating with one another during the incident," and there were "derogatory comments against the Sureno gang, which . . . [considering] the amount of violence that took place . . . is very [conclusive] of what Barrio Azteca does and what they're about." Sanchez explained that incidents between Barrio Azteca and Surenos have been ongoing since 2008. Further, Gomez, whose face is heavily tattooed, testified he is often misidentified as an active gang member, and that when Appellant initially confronted him, Appellant told him he was in Barrio Azteca "territory." Gomez testified that protection of a gang's territory is vital to a gang's ability "to succeed and make money," and explained that to protect its territory a gang may kill, extort, or kidnap to intimidate members of another gang.

8

This evidence was sufficient to permit the jury to reasonably infer that Appellant was a member, and acted with the intent to participate as a member, of the Barrio Azteca criminal street gang in assaulting Gomez. *See Hart v. State*, 89 S.W.3d 61, 64 (Tex.Crim.App. 2002)(direct evidence of intent not required as jury may infer intent to commit aggravated assault as member of criminal street gang from facts that tend to prove its existence, including acts, words, conduct, and method of committing offense); *Curiel*, 243 S.W.3d at 17.

Third, the evidence was sufficient to show that Appellant committed aggravated assault with a deadly weapon. During his testimony, Gomez identified Appellant as the individual who confronted him in the restroom and twice stabbed him with a knife, and stated that the attack left him with permanent scars. The State presented evidence that Gomez suffered multiple stab wounds to his abdomen, evisceration of the bowel, a stab wound to his right thigh, multiple lacerations to his head and face, a laceration to his hand, as well as other injuries. Photographs of Gomez's wounds were admitted into evidence, and Gomez also testified that he suffered nine stab wounds and had 12 inches of his intestines removed.

Although a knife is not a deadly weapon *per se*, it can be a deadly weapon if the manner of its use or intended use is capable of causing death or serious bodily injury. TEX. PENAL CODE ANN. § 1.07(a)(17)(B)(West Supp. 2014); *see Thomas v. State*, 821 S.W.2d 616, 619 (Tex.Crim.App. 1991)(knife is not a deadly weapon *per se*); *Tucker v. State*, 274 S.W.3d 688, 691-92 (Tex.Crim.App. 2008)(a victim's injuries alone may be sufficient to find that a deadly weapon was used). Here, Gomez's testimony that Appellant stabbed him, coupled with the evidence of Gomez's injuries, were sufficient for the jury to find Appellant used the knife as a deadly weapon.

9

Having measured the evidence by the elements of the offense as defined by a hypothetically correct jury charge, we conclude the evidence is sufficient and permitted the jury to reasonably find that Appellant, with the requisite intent and as a member of Barrio Azteca a criminal street gang, committed aggravated assault on Jesus Gomez with a deadly weapon, a knife, and used the knife in a manner capable of causing death or serious bodily injury. Issue One is overruled.

## Sufficiency of the Evidence of Aggravated Assault

In Issue Two, Appellant contends the evidence is insufficient to support his conviction for aggravated assault with a deadly weapon because the State failed to prove he acted as a party to the stabbing of Jesus Gomez. Appellant supports his assertion with evidence that witness Perez testified he searched Appellant when he arrived at Shooter's and did not find or see Appellant with a knife, and evidence that witness Ebarguen testified he saw nothing in Appellant's hands at the time of the attack. We understand Appellant to be arguing that he cannot be held directly responsible for the stabbing because the two witnesses testified they did not observe Appellant in possession of a knife, and that he cannot be held criminally responsible for the conduct of another because the evidence is insufficient to show he acted with the intent to promote or assist the stabbing by soliciting, encouraging, directing, aiding, or attempting to aid another person in the commission of the offense.[6] But, in addition to the evidence noted by Appellant, the State presented other evidence that supports the jury's finding that Appellant himself stabbed Gomez.

---

[6] The charge instructed the jury that a person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both. *See* TEX. PENAL CODE ANN. § 7.01(a)(West 2011). It further instructed the jury that each party to an offense may be charged with the commission of the offense, and that a person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he encourages, directs, aids, or attempts to aid the other person to commit the offense. *See* TEX. PENAL CODE ANN. § 7.02(a)(2)(West 2011). The charge also instructed that mere presence at the scene of an offense will not make a person a party to an offense.

10

Gomez testified that Appellant was among the persons who initially accosted him in the restroom, and stated that he later observed Appellant holding a knife when he was again confronted. Gomez testified that after he asked Appellant whether he was going to "shank" him, Appellant stabbed him twice. This is direct evidence from which the jury could have reasonably concluded that Appellant, by his own conduct, committed the criminal offense of aggravated assault with a deadly weapon as alleged in Count II of the indictment. Direct evidence of a fact is always legally sufficient to support a finding of the fact. *Goodman v. State*, 66 S.W.3d 283, 286 (Tex.Crim.App. 2001). Because this evidence supports the jury's finding that Appellant's own conduct constituted aggravated assault with a deadly weapon, we need not address Appellant's challenge to the sufficiency of the evidence to support his conviction as a party criminally responsible for the conduct of another. Issue Two is overruled.

### Assault as a Lesser-Included Offense

Appellant requested the trial court charge the jury on "simple" assault as a lesser-included offense of aggravated assault with a deadly weapon as alleged in Count II of the indictment. In Issue Three, Appellant contends the trial court erroneously denied his request. We conclude the trial court did not abuse its discretion in denying the request, because the conduct constituting simple assault was not the same as the conduct alleged in the indictment for aggravated assault.

#### *Standard of Review*

We conduct a two-step *Aguilar/Rousseau* analysis to determine whether the trial court should have given the jury a lesser-included offense instruction. *State v. Meru*, 414 S.W.3d 159, 162 (Tex.Crim.App. 2013); *Cavazos v. State*, 382 S.W.3d 377, 382 (Tex.Crim.App. 2012). First, we must determine as a matter of law whether the requested instruction is indeed a lesser-included

11

offense of the offense charged. *Meru*, 414 S.W.3d at 162; *Cavazos*, 382 S.W.3d at 382; *Hall v. State*, 225 S.W.3d 524, 535 (Tex.Crim.App. 2007). To do this, we compare the elements of the offense as alleged in the indictment with those of the requested lesser offense. *Meru*, 414 S.W.3d at 162. Second, before the lesser offense should be submitted, there must be some evidence in the record that would permit a jury to rationally find that, if the defendant is guilty, he is guilty only of the lesser offense. *See Meru*, 414 S.W.3d at 162-163 (citing *Hall*, 225 S.W.3d at 536); *Guzman v. State*, 188 S.W.3d 185, 188–89 (Tex.Crim.App. 2006).

*Analysis*

The Court of Criminal Appeals has made clear that simple assault[7] is not necessarily a lesser-included offense of aggravated assault.[8] While simple assault may be a lesser-included offense of aggravated assault in some cases, to constitute a lesser-included offense of aggravated assault, the conduct constituting the assault must be the same as the conduct alleged in the indictment for the aggravated assault. *Irving v. State,* 176 S.W.3d 842, 845–46 (Tex.Crim.App. 2005); *see* TEX. CODE CRIM. PROC. ANN. art. 37.09 (West 2006) ("An offense is a lesser included offense if … it is established by proof of the same or less than all the facts required to establish the commission of the offense charged[.]"). For instance, in *Irving* the Court held a simple assault stemming from grabbing the victim and eventually falling on top of her, was not a lesser-included offense of the alleged aggravated assault of attacking the victim and causing serious bodily injury by hitting her with a baseball bat. *Irving,* 176 S.W.3d at 845–46.

---

[7] A person commits the offense of "simple" or misdemeanor assault if he, among other things, "intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse[.]" TEX. PENAL CODE ANN. § 22.01(a)(1).

[8] A person commits aggravated assault if he commits assault and "causes serious bodily injury to another, including the person's spouse" or "uses or exhibits a deadly weapon during the commission of the assault." TEX. PENAL CODE ANN. § 22.02(a)(1, 2).

12

Here, like the appellant in *Irving*, Appellant is asking for a lesser-included offense instruction based on facts not required to establish the commission of aggravated assault as charged. That is, Appellant requested an instruction based on conduct different from the conduct alleged in the indictment for aggravated assault. The relevant portion of the indictment for aggravated assault alleged Appellant committed aggravated assault against Gomez by "stabbing him about the body with a knife" and by causing Gomez serious bodily injury by stabbing him with a knife. Here, Appellant is asking for an instruction for simple assault based on evidence that Appellant only punched and kicked Gomez "with everyone else," and that one witness testified he did not see Appellant with a knife in his hands.

The kicking and punching conduct which Appellant promotes on appeal as a basis for the lesser-included instruction on assault is not the same conduct necessary to prove aggravated assault by stabbing Gomez with a knife as alleged in the indictment. *See Irving*, 176 S.W.3d at 845–46. Where the conduct constituting the offense of assault that forms the basis for the requested instruction is not the same as the conduct charged in the indictment for aggravated assault, it is not a lesser-included offense of aggravated assault. *Id.* at 846 ("assault by means of grabbing the victim and eventually falling on top of her is not a lesser-included offense of aggravated assault by striking the victim with a bat" as alleged in the indictment). Because assault by kicking and punching Gomez is not a lesser-included offense of aggravated assault by stabbing Gomez with a knife, Appellant has not satisfied the first prong of the *Aguilar/Rousseau* test.

Therefore, the trial court did not abuse its discretion in denying the requested instruction. Issue Three is overruled.

13

## CONCLUSION

The trial court's judgment is affirmed.


                                        STEVEN L. HUGHES, Justice

April 29, 2015

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)